CIRCUIT COURT OF SHENANDOAH COUNTY

Blue Ridge Truss etc., Inc.

v.

Gordon Builders etc., Inc.

February 22, 1983

Case No. Law 878

By JUDGE HENRY H. WHITING

In this case a seller seeks to recover finance charges from a buyer. Both parties are agreed to be merchants dealing in goods of similar kind and therefore chargeable with the knowledge or skill of merchants in the building manufacture and supply business.

Blue Ridge Truss & Supply Company, Inc. (Blue Ridge) manufactured and sold roof trusses to the building industry, and Gordon Builders & Developers, Inc. (Gordon Builders) used those trusses in buildings in one subdivision in the Manassas area. Blue Ridge is conceded to be the offeror and Gordon Builders the offeree of a contract or contracts to sell, and Gordon Builders claims the sole contract is reflected in a proposal by Blue Ridge dated December 2, 1975, accepted December 8, 1975 by a predecessor business to Gordon Builders. That proposal mentions specifications and prices for certain trusses to be supplied a particular Prince William County job, those prices to be firm for ninety days from that date. According to Gordon Builders, this proposal (not mentioning finance charges) was a re-draft of an earlier proposal which included finance charges of 1-1/2% on all accounts past thirty days. Fulton Gordon, Jr. said it was deleted at his request from the original proposal since

his company did not pay finance charges on its past due accounts owed its creditors. The re-draft also included a separate quote for individual fire retardant regular trusses, an option for extension of overhangs a limited distance and a limitation of these prices for ninety days. Significantly neither party testified that the separate proposal was expressly agreed by the parties to be the relationship which would bind them throughout this entire job no matter how long it lasted. As a matter of fact, the proposal was originally submitted to the firm of Thurner & Gordon and later dealings were with the present firm, which is said to be a successor to Thurner & Gordon, the Gordons apparently buying Thurner out but making no request for the assignment of the benefits of the contract. This proposal of December 2, 1975, apparently never was discussed nor were the terms relating to non-liability for finance charges ever referred to again until this suit was brought.

The relations between the parties, which apparently began shortly after December of 1975, extended over a period of several years and encompassed about 700 orders from 1975 through 1980. Each of the order forms contained the terms of the order and a notice that Blue Ridge should be notified if the order was incorrect. Prominently displayed in the upper left-hand corner of each order form was the statement:

"A FINANCE CHARGE of 1-1/2% will be charged accounts past due. This is an ANNUAL PERCENTAGE RATE OF 18%." (Agreed Exhibit A)

Additionally, bills were rendered monthly containing the finance charge on amounts past due and at the bottom thereof stating:

"A finance charge of 1-1/2% will be charged accounts past due. This is an annual percentage rate of 18%." (Agreed Exhibits B and C)

The shipments were extensive and involved large sums of money over the four to five years of dealings

between the parties, and the finance charges kept accruing.   At one point in 1978 Julian Reed, who was the office and credit manager for Blue Ridge, had two conversations with Fulton Gordon, III seeking to recover both the finance charges which had accrued and a fairly substantial unpaid principal balance. Mr. Reed indicated that Mr. Gordon objected to the finance charges, stating that he did not want to pay those, and an agreement was made that if Gordon Builders paid the principal balance within a certain time the finance charges accruing up to that date would be waived but there was no agreement to waive future finance charges. Neither Mr. Reed nor Mr. Gordon referred to any agreement between the parties not to charge finance charges during their dealings, and specifically the original proposal of December 2, 1975, was never referred to during these conversations.

On another occasion in early June of 1981, Willard Fansler, the owner of Blue Ridge Truss, discussed finance charges again with Mr. Gordon, III, asking him to make a payment on those charges which then  amounted to $1,478.76 for a particular group of orders. The discussion arose when Mr. Fansler had indicated that there would be no more shipments until the principal balance on this particular group of unpaid orders, plus finance charges, was paid.   While Mr. Fansler indicated that Mr. Gordon said to him, "My father doesn't let me pay finance charges," Mr. Fansler's response, partly in jest but to make the point, was, "My father doesn't let me sell trusses unless the finance charges are paid."   (Mr. Gordon was a young man whose father was active in the business, and Mr. Fansler a much older man whose father was apparently deceased and/or had no connection with Blue Ridge.) Mr. Fansler testified it was agreed that if that particular group of invoices was paid, together with $1,000.00 of the finance charges, the requested shipments would be made.   Again Mr. Gordon did not refer to the alleged initial agreement that no finance charges were to be made on any shipments. While there is a dispute as to whether the separate check for $1,000.00 was sent in payment of the finance charges or the principal balance, the Court finds as a fact

that it was sent by Gordon Builders in conformity with the proposal by Mr. Fansler and accepted as such by Blue Ridge.

Although Mr. Gordon, III and his father both testified that their company never paid finance charges to other suppliers and further that it was the custom in the trade for suppliers not to make finance charges on balances over thirty days, this testimony was contradicted not only by Mr. Stephenson, a former salesman of Blue Ridge who had extensive experience in the industry, but also by Mr. Fansler, who was equally experienced. The Court finds as a fact that it was the custom in the trade for suppliers to charge finance charges on accounts over thirty days. While the Court does not believe it rises to the level of judicial notice, no one can be blind to the reality of our credit society over the past twenty-five years, especially in the building industry.

Based upon a careful review of all the evidence, it is the opinion of the Court that:

(1) The proposal dated December 2, 1975, covered only those trusses to be shipped during the ensuing ninety days. The construction urged by Gordon Builders as a "blanket order," Cf. § 3.09, page 3-100, Sales & Bulk Transfers - UCC (Mathew Bender), simply is not established in the documents or by the testimony. The Court does not believe that either party intended the December 2, 1975, document to govern their contractual relations over the following period of almost six years but only to cover those trusses ordered within that period of time.

(2) The contract and credit forms for any trusses ordered after that period of time were covered by the subsequent invoices, documents and dealings between the parties. The order forms furnished by Blue Ridge Truss to Gordon Builders, as well as the invoices, became the operative contracts between the parties and bound Gordon Builders upon Blue Ridge's acceptance by shipment under Virginia Code § 8.2-204. On the other hand, if the Blue Ridge order form is treated as an

offer by Gordon Builders to any goods Gordon Builders is bound by reason of Blue Ridge's acceptance by shipping the goods under § 8.2-206. In either event, both the order form and the invoice clearly bind Gordon to pay finance charges.

(3) Even if the Court construed the original proposals dated December 2, 1975, as the contract between the parties throughout these several years of dealing, the repeated occasions for performance by both of them in placing orders, coupled with invoices sent by Blue Ridge Truss and periodic monthly statements including the finance charges, constituted a modification of the contract by both parties to insert the requirement of finance charges on past due accounts under §§ 8.2-208 and 8.2-209(1) and (4). This modification is confirmed by the failure to allege the original asserted contract during the two conversations about finance charges and by the payment of $1,000.00 on the finance charges in 1981.

If the contractual relations between the parties could be construed as somewhat ambiguous as to payment of finance charges, the contract involved repeated occasions for performance by both parties with knowledge of the nature of the performance and opportunity for objection by the other. The course of performance in building and shipping these trusses with the notation of finance charges thereon, accepted or acquiesced in without objection by Gordon Builders, is relevant and does establish the waiver or modification of agreement to pay finance charges under Virginia Code § 8.2-208.

Counsel for Blue Ridge Truss may draw the appropriate Order awarding judgment for the finance charges which the Court believes have been agreed upon in amount by the parties.